In the Matter of the LEGISLATURE OF THE COUNTY OF ROCKLAND et al., Petitioners, v NEW YORK STATE PUBLIC SERVICE COMMISSION et al., Respondents.

Third Department, December 4, 1975

*Diana Rivet, County Attorney,* for Legislature of the County of Rockland and others, petitioners.

*Romano & Cohen (Joseph F. Romano* and *Sanford Cohen* of counsel), for American Cyanamid Company and another, petitioners.

*Peter H. Schiff (Howard J. Read* and *Charles R. Gibson* of counsel), for New York State Public Service Commission, respondent.

*Le Boeuf, Lamb, Leiby & MacRae (Ronald D. Jones, Gerard A. Maher* and *Andrew Gansberg* of counsel), for Orange and Rockland Utilities, Inc., respondent.

KOREMAN, J. Petitioner, American Cyanamid Company, Lederle Laboratories Division, seeks review of the determinations made by respondent Public Service Commission (PSC) in arriving at a permanent rate increase of approximately $10.8 million granted to respondent Orange and Rockland Utilities, Inc. (ORU), which furnishes electric service to petitioner and other consumers in Rockland County.

Four separate determinations made by the PSC on the application by ORU for new rates designed to produce additional annual operating revenues are challenged in this proceeding. Petitioner contends that in arriving at its decision to shift $500,000 of revenue responsibility from industrial and commercial customers to residential customers, the PSC acted in an illegal and improper manner. This argument is based on the fact that the PSC ordered only a $500,000 shift when all parties had agreed and the hearing examiner recommended that $1,000,000 of revenue responsibility be shifted to residential customers. Although finding that a $1,000,000 shift was cost justified, the PSC concluded that an increase in this amount, when added to recent fuel cost increases, would cause a hardship to residential customers. This conclusion finds support in the record, and was properly arrived at by the PSC as a legislative finding made in the public interest. (Public Service Law, § 72.)

Objection is also made to an attrition or erosion allowance of 0.50%, which petitioner alleges was made in violation of section 72 of the Public Service Law. We do not agree. An attrition allowance is granted when, without it, the utility will not earn a reasonable return, and this court has expressly found such allowance proper when warranted by the evidence

*(Matter of City of New York v Public Serv. Comm. of State of N. Y.,* 17 AD2d 581, mot for lv to app den 13 NY2d 594). Moreover, petitioner does not dispute the sufficiency of the evidence in this regard, but complains only that the PSC did not set forth in detail the computations by which the allowance of 0.50% was arrived at, a factor which would not warrant interference with the determination of the PSC. The other objections raised to the attrition allowance are baseless and totally without merit.

Petitioner objects to the PSC determination to reduce by $1,577,400 the test year revenues attributable to capacity sales to Con Edison. ORU and Con Edison jointly own an electric generating facility, of which ORU's share is one third, or 200 megawatts. While ORU customers do not require all of this power, it must be generated in any event, and someone must bear the cost of generating the power. During the test year, Con Edison bought all of ORU's excess, but ORU contended that it did not expect to be able to sell any of the excess in the future. There is testimony to the effect that some sales are possible, but speculative, and the PSC concluded some sales were possible in the future and arrived at a compromise figure on such sales. While the conclusion arrived at may be based on speculation, any position taken by the PSC would be equally speculative and would have to be based upon certain assumptions regarding future sales. However, the final figures chosen by the PSC in reducing the test year revenues attributable to capacity sales to Con Edison were well within the range of the testimony before it concerning this matter. As this court has stated, although the areas of inclusion or exclusion of certain items in the rate base seem fairly arguable, and petitioner may have made a reasonable showing that some should be taken out, this kind of judgment in a technical area of public utility regulation is one that lies within the special competence of the administrative agency. "These judgments of the commission may well be debatable; but they are not arbitrary. * * * Nor is the decision of the commission in the respects here complained of without reasonable basis." *(Matter of City of New York v Public Serv. Comm. of State of N. Y., supra,* p. 586; see, also, *City of Rochester v Rochester Gas & Elec. Corp.,* 233 NY 39).

The remaining determination here challenged is the allowance by the PSC of a $664,000 rate base increase which represents the investment by ORU in interest accruing during

the course of construction. It is established that utility accounting procedure permits the accruing of interest on moneys invested in capital construction while work is in progress, and when construction is completed and the facility goes into service, all costs of construction, including this accrued interest, are added to the rate base then in effect. The cost of money used to pay interest on borrowed money, or "interest on interest" costs, however, has never before been considered and allowed in establishing a rate base, although it is not disallowed as such either by statute or regulations. It is noted that the hearing officer refused to allow this interest on interest addition to the rate base because, he reasoned, it constituted a compounding of interest which would result in permitting ORU to increase the rate previously set by the PSC for computing interest on construction. But, respondent PSC held otherwise and allowed these costs, noting that witnesses for both staff and ORU agree that these carrying costs of the company's investment should be recouped in some manner.

In arriving at this conclusion, the PSC stated: "Unfortunately, the record develops only two methods of dealing with these costs—taking interest during construction on this interest or placing it in rate base. The lack of adequate exploration of alternate means of permitting a company to cover these costs, however, should not preclude us from dealing with these costs here. For purposes of this proceeding, we will adopt the company's proposal and increase rate base by $664,000. We expect that the appropriate treatment of these costs will be explored fully in future proceedings." Thus, it is clear that the PSC, by its own admission, allowed ORU to increase the rate previously set for computing interest on construction without adequate investigation or analysis of its consequences. We note further that the dissenting opinion of Commissioner Harold A. Jerry, Jr. points out that the allowance of interest on interest permits the utility to increase the rate previously established for computing interest on construction, at a time of rapidly escalating national inflation, without making a thorough analysis of the effect of this concept on all New York utilities, and which cannot fail to raise all utility rates. Moreover, he stated, the determination of interest on construction is not a precise calculation in any event, and to allow the compounding of interest in such an inexact situation where there are variations in the type of work covered, the periods of time included, and the rates allowed, would not be

well advised. It would appear, therefore, that there may be some question as to whether there is a rational basis for including $664,000 as interest during construction in the rate base, and whether such an allowance is supported by substantial evidence. However, in view of the limitations upon the scope of judicial review in these matters, in the present context we may not substitute our judgment for that of the PSC, and we are constrained to confirm its determination in that regard. *(Matter of County of Orange v PSC,* 37 NY2d 762.)

We have held that absent a constitutional or statutory right to a hearing, a party has no right to a hearing before an agency makes a legislative determination *(Matter of Leroy Fantasies v Swidler,* 44 AD2d 266, 270–271, mot for lv to app den 34 NY2d 519). There was, therefore, no denial of the right to a fair hearing.

The determination should be confirmed, and petition dismissed, without costs.

SWEENEY, J. P., KANE, MAIN and LARKIN, JJ., concur.

Determination confirmed, and petition dismissed, without costs.