■   In the Matter of OIL HEAT INSTITUTE OF LONG ISLAND, INC., Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent, and LONG ISLAND LIGHTING COMPANY, Intervenor-Respondent.—Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Public Service Commission, entered January 9, 1978, approving the proposed rates for electric space heating customers of the Long Island Lighting Company (LILCO). Initially, LILCO filed a rate proposal with the Public Service Commission on February 8, 1977. Petitioner herein, the Oil Institute of Long Island, Inc., appeared in the proceedings before the commission as an intervenor and limited its participation to the subject of rates for residential electric space heating customers. The rates were approved on October 7, 1977. On February 13, 1978, petitioner applied for a rehearing which the commission denied by order dated April 17, 1978. This proceeding ensued. Petitioner seeks reversal of the commission's determination on two grounds. First, petitioner asserts that there is no reasonable basis for the commission's approval of the lower tailblock rates for residential space heating customers and, therefore, the commission has violated the proscriptions of subdivisions 2 and 3 of section 65 of the Public Service Law. Secondly, petitioner contends that the commission's determination was not supported by substantial evidence. Rates charged for residential electric usage are subject to a block meter-rate schedule. Under this schedule, a decreasing price per unit of electric energy is charged for successive blocks (quantities) of consumption. The "tailblock" is the last block in the schedule and carries the lowest per kilowatt-hour charge. For example, the charge per kilowatt-hour (KWH) for the first 600 KWH consumed would be the highest, for the next 600 KWH a lower charge, and, for all usage in excess of 1,200 KWH the lowest rate would be charged. Under LILCO's proposed rates, residential space heating customers are charged less per KWH than are nonspace heating customers. Consequently, similarly situated customers, using identical quantities of electricity, at the same time of day, would be charged different rates depending upon whether or not they used electric space heat. The particular rate complained of in this proceeding is the tailblock rate for space heating customers. The

proposed tailblock rate for electric space heating customers from October to May is $2.85 per KWH, while the tailblock rate for other users is $5.10 per KWH during that time interval. LILCO argues that the lower tailblock rate for space heating customers is justified because that class was producing a greater rate of return on investment than the residential nonelectric space heating class, and the marginal cost study indicated that the tailblock rate did not involve economic subsidization. In approving the proposed rates, the commission determined that "the load patterns of LILCO's residential electric space heating customers are plainly distinguishable from the load characteristics of other residential customers"; second, that "employment of the peak responsibility method for allocation of production and transmission costs among the various classes of service was proper"; and, lastly, that since the "rate of return from space heating customers exceeds the average for the system", a reduction in the differential between space heating and nonspace heating tailblock rates "would result in much higher revenues and an intolerable excessive rate of return from space heating customers." The commission concluded that the preferential tailblock rates were not in violation of section 65 of the Public Service Law. In *Matter of New York State Council of Retail Merchants v Public Serv. Comm. of State of N. Y.* (45 NY2d 661, 669), the Court of Appeals stated: "We have held that rate discrimination can be countenanced only if it is either cost-justified or if some other rational basis is to be found in the record." Our review of the record in the instant case reveals that the preferential tailblock rate was both cost justified and rationally based upon external factors. We must, therefore, confirm the determination of the Public Service Commission. Expert testimony was presented by the petitioner and by LILCO in support of their respective positions. Questions of fact and of judgment were presented by the evidence adduced at the hearings. The record established that space heating customers have a higher rate of return and a higher winter load than do other users. Therefore, it was reasonable for the commission to conclude that to charge space heating customers the same or nearly the same tailblock rate as other customers "would result in much higher revenues and an intolerable rate of return." Furthermore, the marginal cost of service study evidence introduced by LILCO demonstrated that there was no economic subsidization between classes of users. Other proof established that LILCO's summer peak would continue to grow relative to its winter peak so as to justify the commission's rejection of petitioner's contention that the company would become a winter peaking utility. Thus, a rational basis exists for the conclusions reached by the commission. We also note that here we are considering a continuation of an already existing preferential tailblock rate for electric space heating customers and not the initiation of a new preference. Of course, judicial review of a Public Service Commission rate determination is a narrow one. "At the outset we observe again that we are in an area presenting problems of a highly technical nature, the solutions to which in general have been left by the Legislature to the expertise of the Public Service Commission. As the commission observed, 'judgment has had to be exercised in assessing costs and translating them into rates'. It is only when it can be shown that the exercise of judgment was without any rational basis or without any reasonable support in the record that the determination of the commission may be set aside [citation omitted]. 'The courts will not interfere with the conclusion [of the rate-making agency] except to safeguard the consumer against arbitrary power' ". (*Matter of New York State Council of Retail Merchants v Public Serv. Comm. of State of N. Y., supra,* p 672.) There is reasonable support in

the record for the commission's conclusions. Upon this record, judicial intervention is not warranted *(Matter of County of Orange v Public Serv. Comm. of State of N. Y.,* 37 NY2d 762). Determination confirmed, and petition dismissed, without costs. Greenblott, J. P., Staley, Jr., Main, Mikoll and Herlihy, JJ., concur.